IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**
*an Illinois Corporation*,

        Plaintiff,

   v.

**DEBRA KILROY and KEVIN KILROY**,

        Defendants,
_____
**DEBRA KILROY and KEVIN KILROY**,

        Third-party Plaintiffs,

   v.

**HARRY PAIK,**
        Third-party Defendant

_____
**DEBRA KILROY and KEVIN KILROY**,

        Counter Claimants,

   v.

**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**
*an Illinois Corporation*,

        Counter Defendant.

Case No. 6:22-cv-01879-MC

OPINION & ORDER

1 – OPINION AND ORDER

MCSHANE, Judge:

In this dispute regarding an insurance claim, Plaintiff Allstate sent a settlement letter to Defendants Debra and Kevin Kilroy that purported to offer the defendants "$1300,000." The letter was littered with typographical errors, the greatest of which was the unfortunate addition of one million dollars to an intended $300,000 maximum payout under the policy. Defendants optimistically ran with this mistake, hoping to shout "Gotcha" all the way to the bank. Plaintiff now seeks a declaratory judgment that there was never a settlement contract between Plaintiff and Defendants. Because Plaintiff has shown there are no genuine issues of material fact, Plaintiff's Motion for Summary Judgment, ECF No. 26, is GRANTED.

## BACKGROUND[1]

In December 2020, Ms. Kilroy was injured by Mr. Paik's dog. Pl.'s Compl. ¶ 5, ECF No. 1. As a result, Ms. Kilroy submitted a claim to Allstate under Mr. Paik's homeowners' policy, which had a maximum payout of $300,000 per incident. *Id.* at ¶ 4–5. Attorney Emmanual Miller, who represented Defendants during claim negotiations, sent Mr. Paik a demand letter for $1,628,652.08. *Id.* at 6-7; Defs.' Answer ¶ 22.

On November 21, 2022, Allstate employee Tricia Anderson sent a settlement offer letter to Mr. Miller that contained several typographical errors. Pl.'s Mot. 5–6; Anderson Decl. Ex. A, ECF No. 28. The letter reads:

> Please be **advsied [sic]** that Allstate is tendering our insured's **Liaiblity [sic] poliy [sic]** limits, in the amount of **$1300,000.00 [sic?]**, in settlement of your client's injury claim arising from the above referenced accident. I have requested a copy of the declarations page and will forward it to you upon receipt. If your client accepts our policy limit tender, please advise of the acceptance and **sent [sic]** a hold harmless letter.

Pl.'s Mot. 5–6; Anderson Decl. Ex. A (emphasis added).

---

[1] The Court views the facts in the light most favorable to Defendants.

That same day, Mr. Miller called Ms. Anderson to clarify the offer. Defs.' Answer ¶ 24. The contents of this phone call are in dispute. *Id.* at ¶ 9; Anderson Decl. at 3 ¶ 8. Mr. Miller alleges the phone call confirmed that Mr. Paik had a $1,000,000 umbrella policy in addition to a $300,000 homeowners policy, making the settlement offer a total of $1,300,000. Defs.' Answer ¶ 9. Ms. Anderson, however, alleges that the phone call clarified that Mr. Paik had only a single $300,000 policy and that the offer was for the maximum payout amount of $300,000. Anderson Decl. ¶ 8; Foley Decl. Ex. B 61–62, ECF No. 27. After this phone call, Mr. Miller "immediately" communicated to the Defendants that Plaintiff offered them a settlement of $1,300,000. Defs.' Answer ¶ 24. "Within minutes" of speaking to Defendants, Mr. Miller sent Ms. Anderson a letter accepting the settlement offer. *Id.*; Anderson Decl. Ex. B. In the acceptance, Mr. Miller changed the original (and disputed) representation of $1300,000 to $1,300,000. Pl.'s Mot. 6; Anderson Decl. Ex. B. Notably, the parties now agree that Mr. Paik never held a $1,000,000 umbrella policy and that the only policy available for settlement was Mr. Paik's $300,000 single limit policy. Miller Decl. 2, ECF No. 31.

On November 22, 2022, Ms. Anderson faxed a correction stating that the settlement offer was for Mr. Paik's policy limit of $300,000. Pl.'s Mot. 6; Anderson Decl. Ex. C. Ms. Anderson's correction fax noted that the $300,000 settlement offer "was confirmed in our telephone conversation yesterday as well." Pl.'s Mot. 6. Ms. Anderson's fax also included the official release agreement for the claim, listing the settlement offer as $300,000. *Id.*; Anderson Decl. Ex. C.

That same day, Mr. Miller responded to Ms. Anderson via letter insisting the claim had been settled the previous day for $1,300,000 (the combined amount of Mr. Paik's $300,000 single limit policy and an additional $1,000,000 umbrella policy that apparently has never

3 – OPINION AND ORDER

existed). Anderson Decl. Ex. D. In the letter, Mr. Miller alleges their previous discussions "clearly reflect an unequivocal offer and acceptance" for $1,300,000 and states Defendants would file a breach of contract suit against Plaintiff if Plaintiff did not pay $1,300,000 before the end of the month. *Id.* Plaintiff then filed this lawsuit and moved for summary judgment. Pl.'s Compl. 1; Pl.'s Mot. 1.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Defendants argue the discussions spanning November 21–22, 2022, resulted in a $1,300,000 contract between Plaintiff and Defendants. Defs.' Answer ¶ 27–28. Plaintiff, on the other hand, argues that the conversations were merely settlement negotiations. Pl's Compl. ¶ 12. The Court agrees. Reasonable people would have known that the million-dollar figure

represented a fanciful settlement offer at best; and one that required a transparent discussion prior to finalization.

## I. Contract Formation

In Oregon, "whether a contract existed is a question of law." *Ken Hood Constr. Co. v. Pacific Coast Constr., Inc.,* 120 P.3d 6, 11 (2005), *modified,* 126 P.3d 1254 (2006). A valid contract requires four components: (1) an offer; (2) an acceptance; (3) mutual assent; and (4) consideration. *Wieck v. Hostetter*, 362 P.3d 254, 262 (2015). Here, because there was no valid offer and because the only assent can be found in what is undisputedly a typographical error, there was no contract.

"An offer must be so definite in its terms . . . that the promises and performances to be rendered by each party are reasonably certain." *Marnon v. Vaughan Motor Co.*, 194 P.2d 992, 1018 (1948). In this case, Plaintiff's short email included five typographical errors, one of which is the core of this dispute: $1300,000. Pl.'s Mot. 5–6; Anderson Decl. Ex. A. While Defendants argue the absence of a comma cannot change the meaning of a number, the multitude of typographical errors—including in the offered amount—signify that the offer was unclear. Defs.' Resp. to Mot. 13, ECF No. 30. Given the fact that the maximum payout under the policy is $300,000, the Defendants had notice that the amount of the offer was in error. Ms. Anderson, although not a typist, is credible in the assertion she did not intend to convey a million dollar offer on behalf of her employer.

Further, the parties agree that Mr. Miller called Ms. Anderson upon receipt of the offer letter to clarify its meaning. Anderson Decl. at 3 ¶ 8; Defs.' Answer ¶ 24. Regardless of the contents of the disputed phone call, the mere fact that Mr. Miller was compelled to call Ms. Anderson to clarify the offer letter supports that it was unclear. Finally, in Mr. Miller's purported

5 – OPINION AND ORDER

acceptance, he rewrote the original figure $1300,000 as $1,300,000. Pl.'s Mot. 6; Anderson Decl. Ex. B. This change further demonstrates that Mr. Miller thought the offer was poorly articulated if not unclear.[2] When a corrected offer letter was sent to the Defendants, the language was clear that the amount of the offer was in fact $300,000. Because the earlier purported offer was unclear, there was no valid offer and therefore no contract.

## II.   Settlement Negotiations

"Where it is clearly understood that the terms of a proposed contract . . . are to be reduced to writing and signed before it is complete and binding on the parties, *there is no final contract until that is done.*" *Gen. Realty Corp. v. Douglas Lowell, Inc.,* 354 P.2d 306, 311 (1960) (emphasis added) (quoting 12 Am.Jur. 522, Contracts § 25). "[M]ere negotiations do not form a contract." 1 Corbin on Contracts § 2.1 (quoting *Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC* (*In re AMC Inv'rs, LLC*), 637 B.R. 43 (Bankr. D. Del. 2022)).

Here, there were several loose ends to tie before the matter was settled and a binding contract was formed. First, in the purported offer letter, Plaintiff requested that Defendants send a hold harmless letter. Pl.'s Mot. 5–6; Anderson Decl. Ex. A. That request went unfulfilled. Pl.'s Mot. 8.  Second, in Defendants' purported acceptance, they requested that Plaintiff send declaration pages. Pl.'s Mot. 6; Anderson Decl. Ex. B. This request also went unfulfilled. Pl.'s Mot. 8. Finally, Defendants' purported acceptance requested that Plaintiff send a release agreement. While Plaintiff indeed sent a release agreement, it was for the corrected sum of $300,000 and went unsigned by Defendants. Pl.'s Mot. 9–11; Anderson Decl. Ex. C. The absence of multiple documents needed to resolve the claim further demonstrates that no contract

---

[2] While the Court does not approach the issue of acceptance in this case, it is noteworthy that an acceptance is invalid when it changes the terms of the offer *See Shaw Wholesale Co. v. Hackbarth*, 201 P. 1066, 1068 (1921).

6 – OPINION AND ORDER

existed between the parties. Rather, the parties simply participated in failed negotiations following a misunderstanding.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (ECF No. 26) is GRANTED.

IT IS SO ORDERED.

DATED this 20th day of February, 2024.

/s/ Michael J. McShane<br>
Michael McShane<br>
United States District Judge